Bryant Fischler, J.
Plaintiff tenants and defendant landlord entered into a lease for the basement apartment in defendant landlord’s building. The building contained two other apartments. On the 5th day of August, 1964, plaintiff tenants moved into said premises at 10:00 p.m., with their child. The husband, one of the plaintiffs, left to purchase some groceries. He returned at 10:45 p.m., whereupon he testified that he saw approximately 12_ cockroaches. His wife testified that while her husband was gone she did not see any cockroaches. Upon his return at 10:45 p.m., the plaintiff tenants claim they saw the roaches and took their child and left the premises. They seek by way of a constructive eviction to recover the deposit of $35.
As a general rule, the presence of great numbers of rats, vermin, and other like pests, or the stench or discomfort caused by them in a building rented to several tenants, where the landlord retains control^-may constitute such a nuisance as to justify a tenant in abandoning the demised premises. (Madden v. Bullock, 115 N. Y. S. 723; Batterman v. Levenson, 102 Misc. 92.) However, the intolerable condition must be such that the tenant neither caused nor can cope with it in his own portion of the premises. (Barnard Realty Co. v. Bonwit, 155 App. Div. 182; Batterman v. Levenson, supra; Jacobs v. Morand, 59 Misc. 200.)
Every deprivation of the beneficial enjoyment of the demised premises does not necessarily amount to a constructive eviction. The deprivation must be “ substantial and effectual.” {Brom *310 berger v. Empire Flashlight Co., 138 Misc. 754.) If the acts complained of can be readily remedied by the tenant, it has been held that such acts are not sufficiently material as to constitute a constructive eviction. (Ben Har Holding Corp. v. Fox, 147 Misc. 300; Jacobs v. Morand, supra; Parmelee v. Pulvola Chem. Co., 31 Misc. 818.) A tenant would not be justified in vacating premises because on some particular occasion he was deprived of their beneficial enjoyment by an act of omission or commission on the part of the landlord. He would, however, if such act continued or were persisted in for an unreasonable time. (Berlinger v. McDonald, 149 App. Div. 5.)
If a tenant is able to show that, during his occupation, his landlord was guilty of affirmative acts causing a nuisance, of a nature dangerous to life or health and against which the tenant is remediless by the performance of any acts called for by his own covenants this is evidence of a constructive eviction. (Sully v. Schmitt, 147 N. Y. 248.)
The landlord may create a nuisance from stench arising upon the landlord’s property and because of the landlord’s repeated neglect. If through the fault of the landlord, the premises are rendered unfit for occupation, the tenant is justified in abandoning them. (Sully v. Schmitt, supra.)
The law is well settled, the condition must be such that the tenant neither caused nor can cope with it. The landlord must also have the opportunity to remedy the situation. The plaintiff tenants made no attempt to help themselves by using what an ordinary housewife would use under the same circumstances nor did they notify defendant landlord to afford him an opportunity to remedy the situation.
Decision for defendant landlord.
Defendant has interposed by way of counterclaim an action for balance due on rent, which was set at $75 for said premises.
The law as it relates to contracts is well settled. “ The law ” said Pound, J., “ wisely imposes upon a party subjected to injury from the breach of a contract the active duty to make reasonable efforts to render the injury as light as possible.” (Losei Realty Corp. v. City of New York, 254 N. Y. 41, 47.)
However, it is well established that the usual obligation in the law of contracts to reduce damages has no application to a contract of leasing, and a landlord is under no obligation or duty to his tenant to relet, or attempt to relet, abandoned premises in order to minimize his damages. (Becar v. Flues, 64 N. Y. 518; Clendinning v. Lindner, 9 Misc. 682.) If the landlord does relet, after the tenants’ abandonment, without the tenants’ express or implied consent to relet on his behalf, such reletting may *311 operate as a surrender by operation of law, and thereby release the tenants from further liability for the balance of the rent. “ It is a well-established principle, that the right to relct, after abandonment by the tenant, rests in contract, and does not flow from the mere relation of landlord and tenant. * * * The rule applicable to certain classes of contracts, requiring a party complaining of a breach to minimize the resultant damage, has no applicability to contracts of lease. * * * He may accept, or refuse to accept, the surrender, but, if he relets without the sanction of an agreement, the tenant cannot be held liable for future rent.” (Gaffney v. Paul, 29 Misc. 642, 644.)
In the instant ease the court finds that the plaintiffs have surrendered said premises and the defendant landlord had accepted same by reletting within five days from said surrender thereby relieving the plaintiffs from further liability for future rent. Plaintiffs’ motion to dismiss the counterclaim granted on the law.