Zehava HARARY, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,
Defendant.

No. Civ.A. CV–95–0234 DGT.

United States District Court,
E.D. New York.

June 23, 1997.

Ernest O. Carrozza, Peekskill, NY, for Plaintiff.

Stuart D. Markowitz, Feldman and Rudy, P.C., Westbury, NY, for Defendant.

*MEMORANDUM AND ORDER*

TRAGER, District Judge.

Plaintiff Harary filed suit in this court in 1995 alleging seven causes of action against defendant Allstate after it denied a claim

under her fire insurance policy.[1] Allstate moved for judgment on the pleadings on the fourth, fifth, sixth, and seventh causes of action. On October 6, 1995, Allstate's motion was denied except as to the fourth cause of action. However, discovery was stayed on these claims unless plaintiff came forth with an amended complaint or until the merits of the first three causes of action were resolved. *See* Tr. of Conference of 10/6/95 ("Tr.") at 11.

Allstate subsequently moved for summary judgment on plaintiff's first three causes of action. By Memorandum and Order dated March 11, 1997 ("M & O"), Allstate's motion was granted on the ground that Harary's failure to cooperate breached her contract with Allstate. At that time decision was reserved as to the disposition of plaintiff's remaining claims. The Memorandum stated that summary judgment on plaintiff's remaining claims would be rendered unless plaintiff moved to amend her complaint. The basis for decision would be that in light of the finding of plaintiff's failure to cooperate, she now lacked standing with regard to the balance of the claims. *See* M & O at 33–34.

On May 2, 1997, plaintiff stated that she would not move to amend her complaint because she was "unable to provide more specific allegations in support of her claims without the evidence that plaintiff believes would be adduced in the course of discovery. . . ." Ltr. from Ernest O. Carrozza, Esq. counsel for plaintiff to court dated May 2, 1997. Plaintiff requested that summary judgment be considered with regard to the "criteria set forth in . . . [the] March 11, 1997 decision." *Id.* Plaintiff also argued that she had standing to bring a suit under 42 U.S.C. § 1982 "separate, apart, and distinct from the contract. . . ." *Id.* In rebuttal, defendant asserted that plaintiff's statement that she lacked any evidence to support a motion to amend the complaint demonstrated that plaintiff was merely engaged in a fishing expedition; that the complaint failed to state a cause of action; and that § 1982 does not extend to actions on an insurance contract. *See* Ltr. from Stuart

D. Markowitz, Esq. counsel for defendant dated May 8, 1997.

Since discovery was stayed on plaintiff's remaining claims, they will be considered under a Rule 12(b)(6) standard. *See Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir.1991). Consideration of plaintiff's remaining claims is proper under this standard for several reasons. First, because discovery was stayed on these claims pending the resolution of the first three claims, no additional facts have been adduced. Second, in light of plaintiff's statement that without discovery she is unable to provide additional facts, review of the complaint's sufficiency is proper at this time. Finally, because the remaining claims have already been the subject of a motion to dismiss, both parties have had notice as well as the opportunity to submit papers in opposition.

■ Motions to dismiss under Fed. R.Civ.P. 12(b)(6) are governed by a liberal standard:

> In deciding such a motion, a district court must construe any well-pleaded factual allegations in the complaint in favor of the plaintiff, and may dismiss the complaint only where " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "

*Sykes v. James,* 13 F.3d 515, 519, (2d Cir. 1993) (quoting *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957))). Nevertheless, "[w]hile the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996) (citations omitted).

**Plaintiff's Fifth Cause of Action**

■ Plaintiff's fifth cause of action is a claim under New York State's consumer protection law prohibiting deceptive practices. Section § 349(a) of the General Business

---

1. Plaintiff's first four causes of action were contractual: property damage, additional living expenses, loss of use, and consequential damages. The fifth cause of action alleged a violation of N.Y.Gen.Bus.L. § 349 (McKinney 1988). The sixth cause of action alleged a violation of 42 U.S.C. § 1982. The seventh cause of action alleged that Allstate had negligently or intentionally inflicted emotional distress.

Law (McKinney 1980) provides that "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." To maintain an action under § 349, a plaintiff must show (1) that the defendant's acts "have a broad impact on consumers at large;" (2) that the defendant is engaged in a deceptive practice; and (3) that this practice has injured the plaintiff. *New York University v. Continental Ins. Co.,* 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 662 N.E.2d 763 (N.Y.1995) (citing cases). Plaintiffs claiming a violation of § 349 must, as a threshold issue, charge consumer oriented conduct. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (N.Y.1995). Consumer oriented conduct is not necessarily repetitive, but it must be a type of conduct that would have an impact on consumers generally. *See id.* Private contractual disputes are usually not within the statute because they are "unique to the parties." *Id.* In the context of insurance contracts, the New York Court of Appeals recently held that an insurance contract that involved sophisticated parties and a large scale insurance contract did not fall within the ambit of the statute. *See New York University,* 87 N.Y.2d at 321, 639 N.Y.S.2d 283, 662 N.E.2d 763. The court left open the possibility that under different circumstances a contract for insurance might give rise to a claim under § 349. *See id.* (citing *Riordan v. Nationwide Mut. Fire Ins. Co.,* 756 F.Supp. 732 (S.D.N.Y.1990)).

Several district courts have considered the adequacy of a pleading under § 349 where the conduct is related to a dispute over an insurance claim. In *Riordan v. Nationwide Mut. Fire Ins. Co.,* 756 F.Supp. 732 (S.D.N.Y.1990), *aff'd in part, question certified,* 977 F.2d 47 (2d Cir.1992), *certification withdrawn,* 984 F.2d 69 (2d Cir.1993) the court held that the plaintiffs could maintain an action under § 349 against a fire insurer who had failed to pay their claim. In *Riordan* plaintiffs sued their insurance carrier claiming that their insurer had adopted "a claim settlement policy and practice designed to frustrate fair and efficient claim settlement, in violation of the New York Insurance

Law...." *Riordan,* 756 F.Supp. at 736. Judge Kram found that the plaintiffs had adequately pled a claim under § 349:

> Although plaintiffs allege that their primary and direct injury results from Nationwide's breach of its obligations under the Policy, plaintiffs expressly allege the existence of a claim settlement policy designed to deceive certain categories of policyholders; in other words, the public at large. Plaintiffs allege a direct causal connection between defendant's alleged illegal claim settlement practice and Nationwide's avoidance of its obligations under the Policy and therefore set forth precisely such evidentiary allegations of injury to the public at large as are required to sustain their claim under the General Business Law.

*Riordan,* 756 F.Supp. at 739 (citation omitted). In their amended complaint, the *Riordan* plaintiffs plead specific factual assertions regarding the treatment of their claim; if true, the conduct violated New York's insurance law in at least five ways. *See id.* at 736, 738.

The sufficiency of a § 349 pleading was also considered in *Tinlee Enter., Inc. v. Aetna Cas. & Sur. Co.,* 834 F.Supp. 605 (E.D.N.Y.1993). In *Tinlee,* the defendant insurer refused to pay on a claim on the ground that the fire damaging plaintiff's building was intentionally set, and that the plaintiff had submitted false documentation in support of its claim. On a motion to dismiss the § 349 cause of action, the court found the pleading insufficient despite the fact that the plaintiff specifically asserted that the pleading was in conformance with the *Riordan* pleading. *See Tinlee,* 834 F.Supp. at 609–10. The *Tinlee* court noted that the *Riordan* plaintiffs had alleged numerous facts, including specific policies and practices of the defendant insurer that the plaintiffs contended violated state law. *See id.* In contrast, the complaint in *Tinlee* merely stated assertions on "information and belief" and as a result was insufficient. *See id.* at 610.

A § 349 pleading was also found lacking in *Grand General Store, Inc. v. Royal Indemni-*

*ty Co.,* No. 93 Civ. 3741, 1994 WL 163973 (S.D.N.Y. April 22, 1994). In *Grand General* the court found plaintiff's § 349 claim facially insufficient: "Except for a conclusory statement at the end of a list of allegations regarding [defendant insurer's] conduct in handling the Plaintiff's claim, Plaintiff has failed to include any evidence of the existence of a claim settlement policy designed to deceive the public at large." *Id.* at *4. The court noted that the plaintiff had not pled facts of the quantity or quality of the facts asserted in *Riordan. See id.* (citing *Tinlee* at 610).

The allegations of deceptive practices appear in ¶ 28 of Harary's complaint:

> [D]efendant['s] deceptive acts and unfair practices included, inter alia, the following: (a) conducting its investigation in a manner calculated, and with the goal of denying payments to the insured; (b) refusing to offer plaintiff or her representative any undisputed portion of her claims which were fair and reasonable as shown by its investigation; (c) continually harassing plaintiff throughout the investigation of the claim by making unreasonable demands for documents and things and causing plaintiff to postpone a trip to Israel to visit her mother who was terminally ill; [ (d) ] denying plaintiff's claim on the basis of alleged fraud despite a total lack of evidence upon which to base said claim.

Like the complaint in *Grand General,* this complaint fails to state a claim under § 349. None of these four assertions suggest any kind of act that could be said to deceive the public generally. The conclusory assertion in the following paragraph that these acts have injured the public at large is insufficient to demonstrate that this dispute is anything other than one between the parties. *See Grand General* at *4.

**Plaintiff's Sixth Cause of Action**

Plaintiff's sixth cause of action alleges that she is "of Israeli ancestry" and that her claims were denied by Allstate "on information and belief ... solely by reason of her race and ethnic origin in violation of 42 U.S.C. § 1982." Compl. ¶ 35.

■ To maintain an action under § 1982, a plaintiff must allege that she was deprived of a property right because of her race. *See Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 436, 88 S.Ct. 2186, 2201, 20 L.Ed.2d 1189 (1968). The raced-based deprivation must be intentional. *See Phillips v. Hunter Trails Community Ass'n,* 685 F.2d 184, 187 (7th Cir.1982) (citing *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 387–90, 102 S.Ct. 3141, 3148–50, 73 L.Ed.2d 835 (1982)). Construing the complaint in a light most favorable to the plaintiff, she has alleged that she is a member of a racial group within the meaning of § 1982. *See Shaare Tefila Congregation v. Cobb,* 481 U.S. 615, 617–18, 107 S.Ct. 2019, 2022, 95 L.Ed.2d 594 (1987) (holding that "Jews and Arabs were among the peoples then considered to be distinct races and hence within the protection of [§ 1982]."). An insurance contract may be property within the meaning of § 1982. *See Sims v. Order of United Commercial Travelers of Am.,* 343 F.Supp. 112, 114 (D.Mass.1972). Thus, for purposes of this motion it will be assumed that plaintiff has standing to bring suit under § 1982.

■ The Court of Appeals for the Second Circuit has recently articulated the standard that a plaintiff's complaint asserting a violation of the Civil Rights Acts must meet to avoid dismissal:

> In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent.... Therefore, "a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)."

*Yusuf v. Vassar College,* 35 F.3d 709, 713–14 (2d Cir.1994) (internal citations omitted) (quoting *Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir. 1978)). The complaint must provide a factual basis for inferring a "racial motivation" for the act. *Yusuf,* 35 F.3d at 714.

■ Plaintiff's complaint does not provide a basis to infer a discriminatory motive for the defendant's acts. First, plaintiff's actual

factual allegations—that defendant demanded documents, refused to pay a portion of the claim, denied the claim on the basis of fraud without any evidence of fraud, and falsely informed plaintiff that she had to stay in the United States while her mother was dying— do not support an inference of intentional "racial" discrimination. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995) (holding that complaint alleging that otherwise similarly situated child was transferred to lower grade without parental permission to allay "racial tension" survives motion to dismiss); *Yusuf*, 35 F.3d at 714 (holding that assertion that act was discriminatory is conclusory where complaint alleges only that disciplinary board and plaintiff are of different races). None of these allegations reasonably suggest that Allstate denied Harary's claim because of her nationality. Nor has Harary pled any other facts that suggest a causal link between intentional discrimination and Allstate's act. The complaint states only that "upon information and belief it is the normal policy and procedure of Defendant" to review and deny claims by "persons of Middle Eastern and/or Israeli backgrounds without basis or justification." Compl. ¶ 33. Because Harary has failed to supply any examples other than her own, or facts that would support this contention the claim is nothing more than a " 'naked allegation' of racial discrimination." *Yusuf*, 35 F.3d at 714 (quoting *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir.1988)).

**Plaintiff's Seventh Cause of Action**

■ In her papers filed opposing the motion to dismiss, Harary makes two arguments in support of her claim for damages due to emotional distress as a result of Allstate's conduct. First, she observes that damages for emotional distress are available for a violation of § 1982. *See Concerned Tenants Ass'n of Indian Trails Apts. v. Indian Trails Apts.*, 496 F.Supp. 522, 528 (N.D.Ill.1980) (citing *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 240, 90 S.Ct. 400, 406, 24 L.Ed.2d 386 (1969)). In light of the fact that Harary has failed to plead a viable § 1982 claim, her complaint will be liberally construed to state a claim for the negligent or intentional infliction of emotional distress under New York law.

■ Even under this theory, however, Harary has failed to state a claim. First, even if Allstate had breached the insurance contract, Harary would not be entitled to damages for emotional distress. *See Wehringer v. Standard Sec. Life Ins. Co. of New York*, 57 N.Y.2d 757, 758–59, 454 N.Y.S.2d 984, 440 N.E.2d 1331 (N.Y.1982). For tort damages to lie, a defendant must breach an independent duty to the plaintiff that is "separate and apart from its failure to fulfill its contractual obligations." *New York University v. Continental Ins. Co.*, 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (N.Y. 1995). Here, plaintiff has not plead any facts that give rise to the inference that defendant owed a separate duty to plaintiff. *See id.* at 317–18, 639 N.Y.S.2d 283, 662 N.E.2d 763 (holding that provisions of New York's insurance law do not give rise to an independent tort duty). Thus, there is no cause of action for the negligent infliction of emotional distress.

■ Plaintiff's allegations are also insufficient to maintain an action for intentional infliction of emotional distress. To state a claim for the intentional infliction of emotional distress in New York, a plaintiff must plead four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (N.Y.1993). The first element is satisfied only when the conduct complained of is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Id.* at 122, 596 N.Y.S.2d 350, 612 N.E.2d 699, quoting *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983), quoting *Restatement (Second) of Torts*, § 46, comment d (1965). Defendant's conduct falls far short of this exacting standard. Even if Allstate "knew" that it would not honor Harary's claim, its "insis-

tence that plaintiff remain in the United States during the period the claims were allegedly being evaluated" causing her to "postpone[ ] trips to Israel to visit her [ailing] mother," Compl. ¶ 41, is not conduct that is outrageous in character or extreme in degree sufficient to maintain an action. Harary was still free to leave the United States and resolve her claim upon her return. Allstate's refusal to pay the claim prior to completing its investigation is not outrageous conduct. *See Burlew v. American Mut. Ins. Co.,* 63 N.Y.2d 412, 417–18, 482 N.Y.S.2d 720, 472 N.E.2d 682 (N.Y.1984) (holding that insurer's attempt to disprove plaintiff's worker's compensation claim is not actionable); *Fischer v. Maloney,* 43 N.Y.2d 553, 557–58, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (N.Y.1978) (finding that defamation claim brought to "malign, harass and intimidate plaintiff" insufficient to maintain action for intentional infliction of emotional distress).

### Conclusion

For the foregoing reasons, plaintiff's remaining causes of action are dismissed for failure to state a claim upon which relief can be granted. The Clerk of the Court is directed to close the case.